## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CONRAD MARK HENCE | § | CASE NO. 06-32451-H4-13 |
| | § | |
| DEBTOR | § | |

## MEMORANDUM OPINION ON: (1) INDIAN CAVE PARTNERSHIP'S OBJECTION TO CONFIRMATION OF PLAN OF AUGUST 18, 2006; AND (2) INDIAN CAVE PARTNERSHIP'S MOTION UNDER RULE 9023 CONFIRMATION OF PLAN OF AUGUST 18, 2006

### I. INTRODUCTION

Indian Cave Park Partnership (Indian) objects to the Amended Plan of Conrad Mark Hence (the Debtor). Indian is the mortgage creditor on the Debtor's homestead. Indian claims that its interests are not properly protected in the Debtor's Amended Plan because (1) the Amended Plan fails to comply with the "reasonable time" restriction of 11 U.S.C. § 1322(b)(5); and (2) the mortgage arrearage owed by the Debtor must bear interest as required by 11 U.S.C. § 1325(a)(5). For the reasons set forth below, this Court holds that the Debtor's Amended Plan complies with 11 U.S.C. § 1322(b)(5) and that no interest must be paid on the arrearage.

On September 25, 2006, the Court orally recited into the record its Findings of Fact and Conclusions of Law related to its ruling. Shortly after this Court orally announced its Findings of Fact and Conclusions of Law, Indian filed its Motion Under Rule 9023.[1] After considering Indian's motion, the Court is of the opinion that it lacks merit and should therefore be denied.

---

[1] The full title of this document is "Indian Cave Partnership's Motion Under Rule 9023 Confirmation of Plan of August 18, 2006." [Docket Nos. 49, 50.]

This Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact it is adopted as such. To the extent that these written Findings of Fact and Conclusions of Law conflict with any of the oral Findings of Fact and Conclusions of Law, the written Findings of Fact and Conclusions of Law govern. Otherwise, the written Findings of Fact and Conclusions of Law supplement the oral Findings of Fact and Conclusions of Law. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as adduced from the exhibits admitted during the September 11, 2006 hearing on Indian's Objection to Confirmation of Plan, in chronological order, are as follows:

A.   **Factual Background**

1.    Indian is the mortgagee on the Debtor's homestead located at 2322 Parana Drive Houston, Harris County, Texas 77080 (the Homestead). [Indian's Exhibit No. 2.][2]

2.    On June 24, 2004, the Debtor executed a Promissory Note (the Note) evidencing the terms of Indian's mortgage loan to the Debtor. [Indian's Exhibit No. 1.]

---

[2]This designation refers to Indian's Exhibits admitted during the September 11, 2006 hearing on Indian's Objection to Confirmation of Plan of August 18, 2006. [Docket No. 28.]

3.      The Note sets forth the following terms: (1) Principal Amount: $121,800.00; (2) Annual Interest Rate: 5.509%; (3) Maturity Date: July 1, 2019; and (4) Annual Interest Rate on Matured, Unpaid Amounts: 18.00%.  *Id.*

4.      The Note also contains the following clause: "All unpaid amounts are due by the Maturity Date.  After maturity, Borrower promises to pay any unpaid balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts."  *Id.*

5.      The Note further specifies that the first payment of $988.16 is due on August 1, 2004.  *Id.* The payment included both principal and interest.  *Id.*  Each subsequent payment is due on the first day of each month thereafter through June 1, 2019.  *Id.*

6.      Additionally, the Note contains the following acceleration clause: "If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due."  *Id.*

7.      The Debtor also executed a Deed of Trust in connection with his purchase of the Homestead. [Indian's Exhibit No. 2.]

8.      Beginning in February of 2006, the Debtor began to default on his mortgage payments.  The Debtor had accumulated arrearages of $5,000.00 prior to the time that he filed for bankruptcy.

**B.      Procedural Background**

9.      The Debtor filed a voluntary Chapter 13 petition on June 5, 2006.  [Docket No. 1.]

10.     On June 15, 2006, the Debtor filed his initial Uniform Plan and Motion for Valuation of Collateral (the Initial Plan) [Docket No. 10], Schedules, Summary of Schedules, and Statement of Financial Affairs [Docket No. 9].  Under the Initial Plan, the Debtor proposed

to pay his bankruptcy attorney's fee beginning with monthly payment one and ending with monthly payment seven of the proposed 60-month plan. [Docket No. 10.] The Debtor's Initial Plan further set forth that the Debtor would pay the $5,000.00 arrearage to Indian during monthly payments 7 through 59. *Id.* The Debtor also proposed that the first two monthly mortgage payments due during the Initial Plan would be converted to an arrearage and paid during monthly payments 7 through 59. *Id.* Additionally, the Debtor proposed that no interest would be paid on either the $5,000.00 arrearage or on the two post-petition mortgage payments that the Debtor planned to convert to an arrearage under the Initial Plan. *Id.*

11.     On July 17, 2006, the Meeting of Creditors was held, and David Peake, the Chapter 13 Trustee (the Trustee), stated that he would not recommend confirmation of the Initial Plan. [Docket No. 18.]

12.     On July 20, 2006, the Trustee filed a Motion to Dismiss on the following grounds: (1) "Payments due pursuant to all U.S.C. § 1326(a)(1), and 1325(a)(2) have not been made;" (2) "The Debtors have caused unreasonable delay that is prejudicial to the Creditors;" and (3) the Debtor "FAILED TO SUBMIT AN EMPLOYEE ORDER." [Docket No. 19.]

13.     On August 17, 2006, the Debtor filed his Response to Trustee's Motion to Dismiss, which set forth: (1) the Debtor wished to continue with the Initial Plan; (2) the Debtor was current with his payments to the Trustee; (3) a wage order had been filed to have the Initial Plan payments deducted from the Debtor's wages; and (4) a request for a hearing on the Trustee's Motion to Dismiss. [Docket No. 23.]

14.     On August 17, 2006, Indian filed an Objection to Plan Confirmation, claiming that: (1) the Debtor's Response to Trustee's Motion to Dismiss was "too late," and this case should be

dismissed; (2) "[t]he Plan mandates that the first two months' post-petition mortgage payments are deemed by a fiction to be pre-petition payments, and by that fiction are to be deemed arrearage;" (3) "[t]he Plan fails to comply with § 1325(a)(5), in that it adjusts the mortgage from the contract payments in an amount of 'present value' that is not adequate to satisfy the claim in full;" and (4) "[t]he Plan fail[ed] to comply with Local Rules and Procedures."   [Docket No. 24.]   At the point that Indian filed its Objection to Plan Confirmation, Indian had not yet filed a proof of claim from which the "claim in full" could be determined.   [*See* Proof of Claim No. 10.]

15.   On August 18, 2006, the Debtor filed an Amended Plan [Docket No. 26] and Amended Schedules I and J [Docket No. 27].   Under the Amended Plan, the Debtor removed the provision setting forth that the first two post-petition mortgage payments would be paid as an arrearage.   [Docket No. 26.]   The Debtor set forth that he would pay his bankruptcy attorney's fee beginning with the first monthly payment and ending on the 15th monthly payment and pay the $5,000.00 arrearage to Indian during the 15th through 57th monthly payments.   *Id.*   The Amended Plan provides that no interest be paid on the arrearage. *Id.*

16.   On August 20, 2006, Indian filed an Objection to Confirmation of Plan of August 18, 2006 (the Objection).   [Docket No. 28.]   Indian objected that the Debtor's Response to the Trustee's Motion to Dismiss was late, and, "[i]n fairness, the case should be dismissed." *Id.* Indian also reiterated that it believed the amount of the arrearage to be in excess of the $5,000.00 figure used by the Debtor.   *Id.*   Additionally, Indian asserted that the Amended Plan did not comply with the Local Rules and Procedures due to "failure to timely pay over funds to the Trustee for disbursement to Indian Cave Partnership, which has received none." *Id.*   Indian further objected to the Amended Plan, claiming that the "cure" of the arrearage

did not occur within a "reasonable time" as required by 11 U.S.C. § 1322(b)(5)[3], as payments for the arrearage would commence on monthly payment 15 and "continue for a period of 32 months."[4]  *Id.*  Indian also objected because the Amended Plan did not provide for interest on the arrearage and "[t]he [N]ote provides for 'interest-on-interest' as it provides 18% per annum interest on 'matured, unpaid amounts.'"  *Id.*  Indian further stated:

> While the [Amended] Plan by its language is not objectionable on the grounds of the amount of the arrearage, since it provides that amount is set by the claim, the amount will be substantially in excess of the $5,000.00 estimated in the [Amended] Plan, and as shown by the budget, there is little room for a substantial increase; the case should be dismissed.[5]

*Id.*  As of the time that Indian filed its Objection, Indian had not filed a proof of claim from which the amount of its claim could be determined.  [*See* Proof of Claim No. 10.]

17.    On September 6, 2006, the Amended Order to the Employer to pay the Chapter 13 Trustee was entered on the docket.  [Docket No. 36.]

18.    On September 7, 2006 the Meeting of Creditors was held, and the Trustee stated that he would recommend confirmation of the Amended Plan.  [Docket No. 37.]

19.    On September 11, 2006, this Court held a hearing on Indian's Objection.  As of September 11, 2006, Indian had not filed a proof of claim.  [*See* Proof of Claim No. 10.]  Further, during the September 11, 2006 hearing, Indian submitted no evidence of collection or foreclosure

---

[3]All statues refer to 11 U.S.C. unless otherwise noted.

[4]In its Objection, Indian objects to payments on the arrearage lasting over 32 months.  However, the Debtor's Amended Plan sets forth that payments on the arrearage owed to Indian will be paid commencing on month 15 and ending on month 57, which encompasses 42 months.

[5]Due to the awkward nature of this language, the Court could not determine Indian's precise objection as set forth in this sentence.  Presumably, Indian was asserting that the arrearage would likely be larger than the $5,000.00 allowed in the Amended Plan.  Because Indian had not filed a proof of claim at the point that it filed its Objection, and provided no evidence as to the amount of its claim until well after the hearing and ruling on its Objection, this Court had no way of determining whether Indian's arrearage was for an amount greater than the $5,000.00 allowed in the Amended Plan.

attempts or of the amount of its claim, including the amount of the arrearage, associated attorney's fees, and other costs.

20.   On September 21, 2006, Indian filed its Memorandum Supporting its Objection. [Docket No. 43.]

21.   On September 25, 2006, in open court, this Court announced its ruling overruling Indian's Objection and recited its Findings of Fact and Conclusions of Law into the record.

22.   Additionally, on September 25, 2006, this Court confirmed the Amended Plan [Docket No. 44] and signed the Court's Order Withdrawing [the Trustee's] Motion to Dismiss [Docket No. 45].

23.   On October 3, 2006, the transcript on the Court's ruling on Indian's Objection was entered on the docket.  [Docket No. 48.]

24.   On October 4, 2006, Indian filed its Motion Under Rule 9023 (the Rule 9023 Motion), requesting that this Court reconsider its ruling confirming the Debtor's Amended Plan and claiming that the Court erred: (1) in determining that the Debtor's Amended Plan provided for cure of the mortgage arrearages within a reasonable time; and (2) in denying Indian 18.00% interest on the arrearages.  [Docket Nos. 49, 50.][6]

25.   On October 12, 2006, Indian filed its Proof of Claim.  [Proof of Claim No. 10.]

### III. CONCLUSIONS OF LAW

#### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This contested matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(B), and (b)(2)(L).

---

[6]It appears that Indian mistakenly filed its Rule 9023 Motion twice at Docket Nos. 49 and 50.  Hereinafter, this Memorandum Opinion will refer to Indian's 9023 Motion at Docket No. 50.

**B.**     **Indian's Objection to the Debtor's Amended Plan**

**1.**     **"Reasonable Time" requirement of § 1322(b)(5)**

Indian argues that the Amended Plan does not satisfy the "reasonable time" requirement of § 1322(b)(5) because it provides that the $5,000.00 arrearage will be paid over monthly payments 15 through 57.  Section 1322(b)(5) allows a plan to cure debts as long as such cure is "within a reasonable time and . . . [on] a secured claim on which the last payment is due after the date on which the final payment under the plan is due."  Indian challenges only the first element of § 1322(b)(5), the "reasonable time" element, on two grounds: (1) commencing payment of the mortgage arrearages on the 15th monthly payment under the Amended Plan; and (2) the payment period thereafter lasting over monthly payments 15 through 57.  [Docket No. 28.]  However, Indian concedes that "while standing alone a delay of some length after the first month might be reasonable, and standing alone, a cure as long as 32 months might be reasonable, together the proposal is not reasonable."  *Id.*

Section 1322(b), provides in pertinent part:

(b)  Subject to subsections (a) and (c) of this section, the plan may--
      . . . .

      (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

      (3)  provide for the curing or waiving of any default;
            . . . .

      (5)  notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
            . . . .

Nowhere in the Bankruptcy Code is there any indication as to what constitutes a "reasonable time" under §1322(b)(5). As one court observed: "Section 1322(b)(5)'s 'reasonable time' is neither defined nor limited by the Code." *First Nat'l Bank of Damariscotta v. Sidelinger (In re Sidelinger)*, 175 B.R. 115, 118-19 (Bankr. D. Me. 1994). Additionally, the Fifth Circuit has not adopted a precise approach to resolve the exact issue this case presents: what is "reasonable time" under § 1322(b)(5)? *See In re East*, 172 B.R. 861, 866 (Bankr. S.D. Tex. 1994).

The court in *Steinacher v. Rojas (In re Steinacher)*, quotes the Honorable Keith M. Lundin's treatise, in which he analyzes how courts have interpreted "reasonable time" under § 1322(b)(5):

> Chapter 13 debtors who invoke § 1322(b)(5) to cure defaults with respect to a long-term home mortgage must do so "within a reasonable time." Few provisions of the Bankruptcy Code have generated so much case law completely lacking in uniformity. In almost every jurisdiction-by local rule, case law or cultural imperative-there is a rule of thumb that home mortgage arrearages must be cured within "X" months of confirmation. "X" varies from jurisdiction to jurisdiction, and in some jurisdictions, "X" varies from case to care. If there is any trend in the reported decisions, it is the increasing use of factors to determine reasonableness. But it cannot be said that the application of factors has produced any greater consistency or predictability in the cases.
>
> Elsewhere, in § 365(b)(1), the Bankruptcy Code requires a trustee to "promptly cure" defaults with respect to a lease or executory contract as a condition of assumption. *Ordinary usage of the words "reasonable" and "promptly" suggests that reasonable should be a less rigorous test for the debtor.*

*Steinacher*, 283 B.R. 768, 774 n.13 (B.A.P. 9th Cir. 2002) (quoting KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 133.1 (3d ed.2000)) (emphasis added and footnotes omitted in *Steinacher*). The Bankruptcy Appellate Panel in *Steinacher* found that a local rule conflicted with § 1322(b)(5) because it required cure of pre-petition defaults within 15 days of the filing of a Chapter 13 petition, instead of within a "reasonable time" as provided by § 1322(b)(5). *Steinacher*, 283 B.R. at 773-74. Further, the *Steinacher* panel found that the local rule "abridge[d] the substantive rights regarding cure provided to all debtors under section 1322(b)," and therefore held that the local rule was invalid. *Id.*

Further, Judge Lundin notes, a few courts have adopted a fixed-term approach to determine what constitutes a "reasonable time" under § 1322(b)(5).  *See In re Newton*, 161 B.R. 207, 211 (Bankr. D. Minn. 1993) (presumption that cure within 12 months is reasonable, subject to the debtor showing that a longer period is reasonable); *In re Hailey*, 17 B.R. 167, 168 (Bankr. S.D. Fla. 1982) (finding that "a reasonable time would ordinarily be between three and six months, and perhaps in extraordinary circumstances, nine or twelve months.")

However, the majority of courts considering the issue of "reasonable time" under § 1322(d) have employed a flexible, case-by-case approach, approving cure periods spanning six months to the maximum 60-month plan period permitted by § 1322(d).  *In re Tudor*, 342 B.R. 540, 564 n.12 (Bankr. S.D. Ohio 2005);[7] *see also Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 237-38 (5th Cir. 1984); *Sapos v. Provident Inst. of Sav. in the Town of Boston*, 967 F.2d 918, 926 (3rd Cir. 1992), (interpreting "reasonable time" "as meaning within the duration of the chapter 13 plan, which may not exceed five years.") (citations omitted), *overruled on other grounds by Hammond v. Commonwealth Mortgage Corp. of Am. (In re Hammond)*, 27 F.3d 52 (3rd Cir. 1994).  As one court observed: "Virtually all authorities agree that a bankruptcy court exercises its discretion in light of

---

[7]*Tudor*, 342 B.R. at 564 n.12, lists the following cases in which the courts approved cure periods ranging from six to the maximum 60 month plan period permitted by § 1322(d):

*See, e.g., In re Ford*, 221 B.R. [749,] 754 [(Bankr. W.D. Tenn. 1998)], (6-month period to cure arrearages reasonable); *In re East*, 172 B.R. 861, 867 (Bankr. S.D. Tex.1994) (52-month period reasonable, notwithstanding the fact that "short-term" mortgage would mature before completion of payment of arrearages); *Sidelinger*, 175 B.R. at 119-20 (36-month cure reasonable); *In re Masterson*, 147 B.R. 295, 296-97 (Bankr. D.N.H.1992) (56-month cure not unreasonable); *Cole v. Cenlar Fed. Sav. Bank (In re Cole)*, 122 B.R. 943, 951-52 (Bankr. E.D. Pa. 1991) (60-month plan to cure confirmed); *In re Chavez*, 117 B.R. 730, 733 (Bankr. S.D. Fla. 1990) (36-month cure reasonable); *Fleet Fin., Inc. v. Randolph (In re Randolph)*, 102 B.R. 902, 903-04 (Bankr. S.D. Ga. 1989) (25-month plan reasonable, even though payments toward arrearage would not begin until the 11th month, and would not be completed until the 35th month); *In re Anderson*, 73 B.R. 993, 996 (Bankr. W.D. Okla. 1987) (17-month cure reasonable); *In re Smith*, 19 B.R. 592, 593 (Bankr. N.D. Ga. 1982) (14-month cure reasonable).

each case's unique facts to determine whether a given plan's cure terms are 'reasonable' within § 1322(b)(5)'s meaning." *Sidelinger*, 175 B.R. at 119 (citations omitted).

Additionally, as Judge Lundin observes, an increasing number of courts using the case-by-case approach have formulated factors to determine whether a plan proposes a cure of arrearages within a "reasonable time." In *In re King*, the court noted that the Bankruptcy Code does not address what constitutes a "reasonable time" to cure under 1322(b)(5), that the legislative history did not provide any guidance on the issue, and that "the commentators are also unhelpful." *In re King*, 7 B.R. 110, 112 (Bankr. S.D. Cal. 1980) (citations omitted). The *King* court therefore concluded that the determination of what constitutes a "reasonable time" under § 1322(b)(5) is left to the discretion of the court. *Id.* The *King* court further stated that "[i]n the exercise of this discretion, it is clear that what will be a 'reasonable time' under Section 1322(b)(5) is a question to be decided on the facts and equities present in each case." *Id.* (citing *In re Coleman*, 2 B.R. 348, 350 (Bankr. W.D. Ky. 1980), *aff'd*, 5 B.R. 812 (W.D. Ky. 1980); *Epps v. Blackshear* (*In re Epps*), 2 B.R. 737 (Bankr. S.D.N.Y.1980)). The *King* court then determined that "[u]nder this case by case approach, certain equitable factors must be considered in evaluating the reasonableness of a proposal under Section 1322(b)(5)." *King*, 7 B.R. at 112. The *King* court considered the following factors:

> (1) the debtor's payment record;
> (2) the length of the payment period on the original obligation;
> (3) the reason for the arrearage;
> (4) the nature of the security for the debt;
> (5) whether the debtor is putting forth his or her best effort to cure the default.

*Id.* at 112-13. Additionally, in *In re Pollasky*, the court considered the following factors:

> (1) the necessity of the asset to an effective rehabilitation of the debtor; (2) the availability of the debtor's discretionary income to cure a default; (3) the amount of the default; (4) the time over which the default has accrued compared to the time within which it is to be cured; (5) the debtor's ability to meet the obligations of the plan; (6) the debtor's ability to continue current payments on the installment obligations.

*In re Wiggins*, 21 B.R. 532, 534 (Bankr. D.S.C. 1982) (citing *In re Pollasky*, 7 B.R. 770 (Bankr. D. Colo. 1980)).

In *King*, *Pollasky*, and other cases applying factors to the determination of whether a cure period covers a "reasonable time," a common consideration was whether the proposed cure period represented the debtor's best effort, or stated differently, "the availability of the debtor's discretionary income to cure a default." *See Wiggins*, 21 B.R. at 534 (applying *Pollasky* factors); *Home Fed. Sav. and Loan Ass'n of Sioux City, Iowa (In re Beckman)*, 9 B.R. 193, 197 (Bankr. N.D. Iowa 1981) (applying *King* factors); *Pollasky*, 7 B.R. at 771-72; *King*, 7 B.R. at 113. These courts looked to whether the debtors' plans provided for payments that were "the most that the debtors can reasonably be expected to handle with their income." *Beckman*, 9 B.R. at 197; *see also Wiggins*, 21 B.R. at 534 (finding that plan proposed cure of arrearages within a "reasonable time" after noting that "the debtors are applying most of their meager income to curing the arrearages on the bank's mortgage so that they may keep their home—an asset essential to their reorganization.") The *King* court determined that the debtors were putting forth their best effort and, based on all of the factors, determined that the debtor's proposed method of cure could not be deemed "halfhearted or inequitable." *King*, 7 B.R. at 113. Accordingly, the *King* court concluded that the debtors' proposal to repay the arrearages was reasonable under § 1322(b)(5) and overruled the creditor's objection to the debtors' proposed plan. *Id.*

While courts within the Fifth Circuit have not articulated factors to be considered in determining the issue, cases in the Fifth Circuit have approved confirmation of plans that represent the debtor's best effort to repay his debt while maintaining the current terms of the mortgage throughout its term. *See Grubbs*, 730 F.2d 236; *East*, 172 B.R. 861. As the Fifth Circuit has stated, § 1322(b)(5) "was designed to enable a debtor to preserve his equity in his mortgaged home and to

12

provide a means to restore and maintain his currency on a long-term debt." *Grubbs*, 730 F.2d at 245. Here, the Debtor's Amended Plan utilizes his projected disposable income to satisfy his debts over the 60-month period. The Amended Plan indicates $1,376.79 as the Debtor's projected monthly disposable income. [Docket No. 26.] The first two payments are in the amount of $1,350.00 each, with the remainder of the payments in the amount of $1,375.00 each. *Id.* Because the Debtor is dedicating nearly all of his projected disposable income to satisfy his debts under the Amended Plan, the Debtor is making a good faith, best effort. Like the debtors in *King*, the Debtor's proposal to repay his arrearages cannot be deemed "halfhearted or inequitable." *King*, 7 B.R. at 113.

In sum, the flexible, case-by-case approach adopted by most courts considering the issue is in line with cases from the Fifth Circuit. *See Grubbs*, 730 F.2d 236; *East*, 172 B.R. 861.[8]   In *Grubbs*, the Fifth Circuit determined that a home mortgagor/debtor could, upon approval of the bankruptcy court, cure pre-petition arrearages, including pre-petition acceleration, through the entire term of the debtor's Chapter 13 plan. *Grubbs*, 730 F.2d at 237, (citing *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir. 1982)). Additionally, in *East*, the court approved a cure of a mortgage arrearage that covered a period of 52 months, which went well beyond the term of the underlying mortgage. *East*, 172 B.R. at 864, 867.   Considering these cases, this Court concludes that § 1322(b)(5) contemplates that debtors may have a broad range of possibilities for repayment of

---

[8]Both *Grubbs* and *East* were ultimately were decided on § 1322(b)(3) grounds, and Indian's Objection is grounded in § 1322(b)(5). Nevertheless, as the court observed in *East*, "while subsection (b)(2) of section 1322 generally prohibits the modification of a home mortgagee's rights, such proscription does not affect a debtor's ability to cure either 'long-term' mortgage debts, § 1322(b)(5), or 'short-term' mortgage debts, § 1322(b)(3)." *East*, 172 B.R. at 866 (citing *Grubbs*, 730 F.2d at 238-47; *Taddeo*, 685 F.2d at 27; 5 *Collier on Bankruptcy* ¶ 1322.07[2], at 1322-20 (Lawrence P. King ed., 15th ed. 1994) and additional legislative history in n.5)). Further, the legislative history reflects that "the 'notwithstanding' language was added to subsection (b)(5) to ensure that no one would mistake subsection (b)(2)'s proscription as preventing debtors from dealing with long-term mortgage debts beyond the three-to-five-year period of a Chapter 13 plan." *East*, 172 B.R. at 866 n.5 (citing *Grubbs*, 730 F.2d at 246; 124 CONG. REC. H11,106 (daily ed. Sept. 28, 1978); 124 CONG. REC. S17,424 (daily ed. Oct. 6, 1978)).

mortgage arrearages within the period of a Chapter 13 plan, provided that the repayment of the arrearages occurs within a "reasonable time."

As noted above, the Debtor has proposed an Amended Plan that utilizes nearly all of his disposable income to satisfy his debts.  The Debtor's Amended Plan provides for payment of his mortgage arrearages, while allowing the Debtor to maintain the current terms of the mortgage throughout its term and therefore comports with § 1322(b)(5)'s express provision that "a plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending."  *See Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*; 111 F.3d 1264, 1269 (5th Cir. 1997); *Grubbs*, 730 F.2d at 245.  Additionally, in *Grubbs*, the Fifth Circuit found that § 1322(b) did not prohibit the Debtor from paying off delinquent and matured amounts over the entire term of the proposed plan.[9]  *Grubbs*, 730 F.2d at 238.  The Debtor's Amended Plan provides for payment of the arrearages within the last 42 months of a 60-month plan. [*See* Docket No. 26.]   Although the payment period occurs over the final 42 payments of the 60-month term of the Amended Plan, such a schedule does not contradict cases from courts in the Fifth Circuit as the payment of all of the arrearages would still occur within the term of the Amended Plan. *Id.*  Indian has provided no authority supporting its contention that delaying commencement of payments on the arrearages until the 15th monthly payment is unreasonable, and this Court finds none.  Accordingly, this Court holds that the Debtor's Amended Plan provides for payment of the

---

[9]As noted *supra* at footnote 8, *Grubbs* is not squarely on point with the issue presented in this matter.  As the court stated in *East*:

> Although *Grubbs* is not directly on point . . . (in that the entire indebtedness in *Grubbs* had become due pre-petition due to acceleration), I believe that the outcome in *Grubbs* supports Debtor's position. The Fifth Circuit in *Grubbs* permitted the debtor to provide for payment of the loan's remaining principal over the life of the plan, notwithstanding the underlying note's maturity within the plan's term.

*East*, 172 B.R. at 867.  This Court similarly concludes that *Grubbs* supports the proposition that a mortgage arrearage, such as the $5,000.00 arrearage owed by the Debtor in this matter, may be paid over the life of the plan.

mortgage arrearages within a "reasonable time" under § 1322(b)(5). This Court therefore overrules Indian's Objection on this ground.

### 2.   Denial of 18.00% Interest on the Arrearages

Indian argues that the Amended Plan violates § 1325(a)(5) because it proposes to pay no interest on the mortgage arrearage, while the underlying Note allows for 18.00% per annum "interest-on-interest" on any "matured, unpaid amounts." [Docket No. 28.] This Court disagrees.

At one time, it was true that § 1325(a)(5) was a proper avenue to seek interest on pre-petition arrearages under the Bankruptcy Code. *See Rake v. Wade*, 508 U.S. 464, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993). However, Congress enacted § 1322(e) as the proper provision of the Bankruptcy Code to seek interest on pre-petition arrearages and effectively overruled *Rake*. 140 CONG. REC. H10770 (Oct. 4, 1994). *See also O'Connell v. Troy & Nichols, Inc. (In re Cabrera)*, 99 F.3d 684 (5th Cir. 1996); *In re Perez*, 339 B.R. 385, 404 n.22 (Bankr. S.D. Tex. 2006). With regard to § 1322(e), the Congressional Record for the Bankruptcy Reform Act of 1994 states as follows:

> Interest on interest
>
> This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, 113 S. Ct. 2187 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. *It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.*

140 Cong. Rec. H10770 (Oct. 4, 1994) (emphasis added).  Considering that Congress intended that "a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred," Indian is not entitled to 18.00% "interest-on-interest" on any "matured, unpaid amounts." *Id.*; [Docket No. 28.]  Additionally, pursuant to § 1322(e), this Court is required to look at the "underlying agreement and applicable nonbankruptcy law."  Under the underlying agreement and applicable nonbankruptcy law, Indian is not entitled to 18.00% "interest-on-interest" on "matured, unpaid amounts," primarily because the Note is ambiguous.

Indian asserts that the Deed of Trust and/or the Note require that 18.00% interest is to attach automatically to unpaid delinquent payments and/or "attorney fees, other foreclosure fees, ad valorem tax payments, insurance payments and any other such amounts . . . ." [Docket No. 43.]  The Court notes that at the September 6, 2006 hearing, Indian submitted no evidence as to these amounts or the total amount of its claim.  Indian argues that it is entitled to the additional 18.00% in interest because of the following language in the Note: "Matured, Unpaid Amounts: 18.00%" and "Maturity Date: JULY 1, 2019" in the Note.  *Id.*  The Note contains a provision that states: "All unpaid amounts are due by the Maturity Date.  After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts." [Indian's Exhibit No. 1.]  Under Indian's proposed reading, once the Debtor defaulted on a $988.16 monthly payment (which includes both principal and interest of 5.509%), an additional 18.00% in interest would attach to the defaulted payment, and then another 18.00% would attach after July 1, 2019.  This interpretation is not reasonable because there could potentially be three different levels of interest applied to the principal: 5.509%, then 18.00% upon default, and then another 18.00% after July 1, 2019.

However, even if Indian's were a reasonable interpretation, in applying the underlying nonbankruptcy law, other valid interpretations of the Note exist. One interpretation is that the event triggering the applicability of the 18.00% in interest has not yet occurred. The Note states: "All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts." *Id.* As previously noted, the Note indicates: "Maturity Date: JULY 1, 2019." Under Texas law, "[a] contextual analysis of the contract is the proper approach to determine the meaning of contractual terms." *Parkans Int'l L.L.C. v. Zurich Ins. Co.*, 299 F.3d 514, 517 (5th Cir. 2002) (citing *Gulf Metals Indus., Inc. v. Chicago Ins. Co.*, 993 S.W.2d 800, 805-06 (Tex. App.—Austin 1999, pet. denied)). Because of the proximity of "unpaid amounts" and the defined term "Maturity Date," with the following sentence, the Note could reasonably be interpreted as: "All unpaid amounts are due by [JULY 1, 2019]. After [JULY 1, 2019], Borrower agrees to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts." Because "JULY 1, 2019" has not yet occurred, the "Annual Interest Rate on Matured, Unpaid Amounts" of 18.00 % cannot yet apply to the unpaid amount. At the very least, these phrases are ambiguous. Texas law provides: "It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) (citation omitted). Accordingly, this Court construes any ambiguity against Indian and finds that Indian is not entitled to the 18.00% interest on the arrearages and other costs.

Another interpretation of the Note is that it created an option for Indian to collect 18.00% interest on the unpaid delinquent portions of the Note. The Note contains the following sentence: "If Borrower defaults in the payment of this note or in the performance of any obligation in any

17

instrument securing or collateral to this note, Lender *may* declare the unpaid principal balance, and earned interest, and any other amounts owed on the note immediately due." [Indian's Exhibit No. 1.] (emphasis added). A reasonable interpretation of this language is that Indian "may" declare the "principal balance, and earned interest, and any other amounts owed on the note *immediately due*," instead of due on the "Maturity Date" of July 1, 2019. *Id.* (emphasis added). Such language amounts to an acceleration clause. Under Texas law, the language of an acceleration must be "clear and unequivocal" to be effective. *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 31 (Tex. App.— Dallas 1992, no pet.) (citing *Ogden v. Gibraltar Sav. Ass'n.*, 640 S.W.2d 232 (Tex. 1982)). In *Ogden*, the Texas Supreme Court held that the "may" language in a lender's letter to the mortgagor stating "failure to cure the breach may result in acceleration," was not clear and unequivocal, and the lender's attempted acceleration was therefore ineffective. *Ogden*, 640 S.W.2d at 234. There is no evidence that Indian accelerated the Note, or clearly and unequivocally declared the amounts due immediately, thereby accelerating the Maturity Date of July 1, 2019. For these reasons, Indian is not entitled to the 18.00% interest on the arrearages.

## C.      Indian's 9023 Motion

Shortly after this Court announced its Findings of Fact and Conclusions of Law from the bench, Indian filed its 9023 Motion. [Docket No. 50.] In its 9023 Motion, Indian claims that the Court erred in finding: (1) that the Debtor's Amended Plan satisfied the "reasonable time" requirement of § 1322(b)(5); and (2) that Indian is not entitled to 18.00% interest on the arrearages.

### 1.      Standard for Awarding Relief Under Rule 9023

With regard to motions for new trial or to amend judgments,[10] the Fifth Circuit has explained:

---

[10]Bankruptcy Rule 9023 incorporates Federal Rule of Civil Procedure 59. Both rules are titled "New Trials, Amendment of Judgments." In its 9023 Motion, Indian does not specify whether it is seeking a new trial, an amended judgment, or both, but generally prays that the Debtor's Amended Plan not be confirmed. [Docket No. 50.] Accordingly,

> Motions for new trial or to alter or amend a judgment must clearly establish either a
> manifest error of law or fact or must present newly discovered evidence. These
> motions cannot be used to raise arguments, which could, and should, have been made
> before the judgment issued. Moreover, they cannot be used to argue a case under a
> new legal theory.

*Pluet v. Frasier*, 355 F.3d 381, 384 n.2 (5th Cir. 2004) (quoting *Simon v. United States*, 891 F.2d

1154, 1159 (5th Cir. 1990)).   The Fifth Circuit has further stated that relief under Federal Rule 59(e)

is an "extraordinary remedy that should be used sparingly." *Templet v. HydroChem, Inc.*, 367 F.3d

473, 479 (5th Cir. 2004) (citations omitted).  The Fifth Circuit has further explained as follows:

> A Rule 59(e) motion calls into question the correctness of a judgment.  This Court
> has held that such a motion is not the proper vehicle for rehashing evidence, legal
> theories, or arguments that could have been offered or raised before the entry of
> judgment.  Rather, Rule 59(e) serves the narrow purpose of allowing a party to
> correct manifest errors of law or fact or to present newly discovered evidence.

*Id.* at 478-79 (citations and internal quotations omitted).

Additionally, a court has discretion to grant a new trial pursuant to Federal Rule 59(e) "to

prevent an injustice." *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th

Cir. 1995) (quoting *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993) (quoting *Delta Eng'g*

*Corp. v. Scott*, 322 F.2d 11, 15-16 (5th Cir. 1963)).  Further, "[a] clear abuse of that discretion or

some extraordinary legal situation must be demonstrated to obtain relief from such action." *Delta*

*Eng'g*, 322 F.2d at 16.

### 2.   "Reasonable Time" Under § 1322(a)(5)

With regard to "reasonable time" under § 1322(a)(5), Indian claims that the Court erred in

applying a case-by-case analysis and considering whether the Amended Plan represented the

Debtor's "best effort." [Docket No. 50, pp. 4-5.]  As set forth above, the Fifth Circuit has not

articulated a specific test in determining whether a plan provides for the curing of a default within

---

this Court will set forth the standard for motions for new trial and amended judgment under Federal Rule of Civil
Procedure 59, as incorporated by Bankruptcy Rule 9023.

a "reasonable time." Further, in cases within the Fifth Circuit deciding the issue, the courts have applied a fairly liberal analysis in approving proposed Chapter 13 plans. *See Grubbs*, 730 F.2d 236; *East*, 172 B.R. at 866. While the courts in *Grubbs* and *East* may not have articulated that they were employing a case-by-case analysis, the very fact that the courts in *Grubbs* and *East* used analyses considering the facts of each case, instead of articulating a specific test, demonstrates use of a case-by-case method. This Court considered the Debtor's "best effort," i.e. the availability of discretionary income to repay the arrearage, because it was a common consideration in the few cases that did articulate factors with regard to "reasonable time." Additionally, this Court considered this factor, among other considerations, in the context of all of the facts present in this case, thereby employing a case-specific analysis as the courts in *East* and *Grubbs* did. *See Wiggins*, 21 B.R. at 534; *Beckman*, 9 B.R. at 197; *King*, 7 B.R. at 112-13; *Pollasky*, 7 B.R. 770. For these reasons, Indian has not clearly established a manifest error of fact or law or presented newly discovered evidence. *Pluet*, 355 F.3d at 384 n.2. Indian is therefore not entitled to relief under Rule 9023 with regard to the § 1322(b)(5) issue. *See id.*

### 3.    18.00% Interest

Indian claims that the Court improperly denied it 18.00% on the mortgage arrearages. Indian claims that "Amounts" in "Annual Interest on Matured, Unpaid Amounts: 18.00%" is plural and should be given its plain meaning to include application of the 18.00% interest to the arrearages. [Docket No. 50, p. 1.] Indian further complains that the Court did not address the language in the Deed of Trust and asserts that it requires "payment of interest on attorney's fees, other foreclosure fees, ad valorem tax payments, insurance payments and any other such amounts as set forth in the

deed of trust and actually incurred by Indian." *Id.* at 1-2.[11]   Additionally, Indian claims that the Court's application of Texas law regarding acceleration is improper because the issue of acceleration was not before the Court. *Id.* at 2.

As set forth above, the Note is ambiguous.  The Note could be reasonably interpreted to mean that the "Annual Interest Rate on Matured, Unpaid Amounts [of] 18.00%" applies on amounts due on the Maturity Date of July 1, 2019.  Following this language is the language of acceleration: "If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender *may* declare the unpaid principal balance, *and* earned interest, *and* any other amounts owed on the note immediately due." *Id.* (emphasis added). The use of "and" instead of "or" demonstrates that Indian may declare all of these amounts immediately due, not just the unpaid monthly payments of principal and interest.  Such language creates an acceleration clause.  Texas law provides that the language of an acceleration must be "clear and unequivocal" to be effective. *Thompson*, 840 S.W.2d at 31 (citing *Ogden*, 640 S.W.2d 232).  There was no evidence that Indian expressed a "clear and unequivocal" intent to accelerate the Note; for example, Indian did not introduced any letters accelerating the balance of the Note. Accordingly, there was no evidence that Indian committed the act necessary under Texas law to trigger the application of 18.00% interest on the arrearages.

Additionally, the Note, in pertinent part, provides:

> Borrower also promises to pay reasonable fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note.  These expenses

---

[11]The Court again notes that Indian did not submit any evidence as to the amount of its claim, including attorney's fees and other costs.  In fact, Indian did not file its Proof of Claim until over a week after filing its 9023 Motion.  [*See* Proof of Claim No. 10.]  Consequently, the Court did not have sufficient evidence before it at the September 11, 2006 hearing on Indian's Objection to determine what amount of the payment under the Amended Plan, if any, should be allocated to interest on arrearages, attorney's fees, or other costs.  Indian had ample opportunity to make a record, and failed to avail itself of this opportunity.  A Rule 9023 motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478-479 (5th Cir. 2004).

> will bear interest from the date of advance at the Annual Interest Rate on Matured,
> Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand
> at the Place for Payment. These expenses and interest will become part of the debt
> evidenced by the note and will be secured by any security for payment.

[Indian's Exhibit No. 1.] Assuming that Indian is entitled to payment of fees and costs under this provision, the 18.00% interest would still not be applied for the same reason as stated above: the the 18.00% interest clause is ambiguous. When the Debtor did not pay "these expenses and interest on demand at the Place for Payment," they became "part of the debt evidenced by the [N]ote." As previously discussed, the Note provides that "[a]ll unpaid amounts are due by the Maturity Date [of July 1, 2019]. After maturity, the Borrower agrees to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts [of 18.00%]." Thus, the attorneys fees and costs associated with collecting the arrearages becomes part of the underlying debt on the Note, and this Court above determined that this debt is not subject to the 18.00% interest because: (1) it was not accelerated; and (2) the Maturity Date of July 1, 2019 has not occurred.

Next, the Court recognizes that the Deed of Trust provides for "payment of interest on attorney's fees, other foreclosure fees, ad valorem tax payments, insurance payments and any other such amounts as set forth in the deed of trust and actually incurred by Indian." [Docket No. 50, pp. 1-2.] However, under the facts of this case, Indian is not entitled to such interest. In part B.5., the Deed of Trust provides:

> If Grantor fails to perform any of Grantor's obligations, Lender may perform those
> obligations and be reimbursed by Grantor on demand for any amounts so paid,
> including attorney's fees, plus interest on those amounts from the dates of payment
> at the rate stated in the Note for matured, unpaid amounts. The amount to be
> reimbursed will be secured by this deed of trust.

[Indian's Exhibit No. 2.] There is no evidence that Indian made the payments that the Debtor missed. Moreover, even if Indian had made the Debtor's monthly payments, the Deed of Trust would not provide a basis to claim fees and interest on those payments. Part B.5 of the Deed of Trust

22

is limited to situations where the Lender has performed one of the "Grantor's obligations." Part A of the Deed of Trust, titled "Grantor's Obligations," does not mention the monthly payments. *Id.* In fact, the language of Part A goes so far as to, at least implicitly, exclude the monthly payments under the Note from its purview.[12] Therefore, under a literal interpretation of the Deed of Trust, Indian cannot seek reimbursement for the attorney's fees and interest associated with the arrearages under the Deed of Trust, or, as discussed above, under the Note.

This Court remains mindful of the legislative intent behind § 1322(e). *See* 140 CONG. REC. H10770 (Oct. 4, 1994). As set forth above, Congress' intent was "that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." *Id.* Interpreting the Note and Deed of Trust as not allowing for 18.00% on the attorney's fees and other expenses supports this legislative intent.

In sum, Indian is not entitled to relief under Rule 9023 because it has neither clearly established a manifest error of law or fact, nor has it presented newly-discovered evidence. *Pluet,* 355 F.3d at 384 n.2. Accordingly, Indian's 9023 Motion is denied.

---

[12] Among other duties, one of the "Debtor's Obligations" in the Deed of Trust requires that:

> Grantor agrees to make an initial deposit in a reasonable amount to be determined by Lender and then make monthly payments to a fund for taxes and insurance premiums on the Property. Monthly payments will be made on the payment dates specified in the Note, and each payment will be one-twelfth of the amount that Lender estimates will be required annually for payment of taxes and insurance premiums. The fund will accrue no interest, and Lender will hold it without bond in escrow and use it to pay taxes and insurance premiums . . . Deposits to the fund described in this paragraph are in addition to the monthly payments provided for in the Note.

[Indian's Exhibit No. 2, ¶ A.6.] It is clear from the last sentence of this clause that the monthly payments under the Note were not intended to be one of the "Debtor's Obligations". Therefore, arrearages of the monthly Note payments are not subject to the fees and interest of Part B.5 of the Deed of Trust.

## IV. CONCLUSION

The Debtor's Amended Plan sets forth repayment of the mortgage arrearages within a reasonable time pursuant to § 1322(a)(5).   Additionally, pursuant to the underlying mortgage agreement and relevant nonbankruptcy law, Indian is not entitled to 18.00% interest on the mortgage arrearages, attorney's fees, and other costs that the Debtor owes to Indian.   Accordingly, this Court overrules Indian's Objection.   Further, Indian's 9023 Motion has neither clearly established a manifest error of law or fact, nor has it presented newly-discovered evidence.   *Pluet*, 355 F.3d at 384 n.2.   Therefore, this Court denies Indian's 9023 Motion.   An order overruling Indian's Objection and denying Indian's 9023 Motion will be entered simultaneously on the docket with this Memorandum Opinion.

Signed on this 20th day of December 2006.

Jeff Bohm
U.S. Bankruptcy Judge